**Anthony HARRIS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 90–309.

District of Columbia Court of Appeals.

Submitted March 5, 1992.
Decided April 17, 1992.

Russell F. Canan, Washington, D.C., appointed by this court, was on the brief for appellant.

Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas C. Black, Larry Parkinson, and Leslie Ann Wise, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before ROGERS, Chief Judge and TERRY and STEADMAN, Associate Judges.

ROGERS, Chief Judge:

Appellant Anthony Harris appeals his conviction by a jury of armed robbery, D.C.Code §§ 22–2901, –3202 (1989 Repl.), on the grounds that his due process rights were violated when the trial judge failed to remove a potential juror for cause and refused to grant a mistrial when another juror mistakenly failed to respond to a question during voir dire.[1] We affirm.

## I

During voir dire, the trial judge posed the *Ridley*[2] question to potential jurors:

> The question is whether any of you, members of your family or very close friends within the past ten years either have been a victim of a crime, a witness to a crime or accused, that is, charged with having committed a crime. I'm going to repeat the question.

> Have any or you or have any members of your family or have any of your close friends either been a victim of a crime, a witness to a crime, whether or not you were summoned to court to testify, or accused or [sic] having committed a crime. I have limited this question to the past ten years, but if there is something significant that happened further back than this ten years, we would want to know about that as well.

Juror number 973 answered this question affirmatively and explained that she had been the victim of a pickpocket and the victim of an armed robbery. In response to defense counsel's questioning, the juror said:

> Well, the armed robbery was pretty traumatizing. I thought I was going to be killed. I really did. Because we all saw them, there were two of them, and they herded us into a room before they left, and I thought this is it, and it's something I think will be with me all of the rest of my life, but on the other hand, I feel I'm an analytical person and I can deal with facts. It's hard to call.

Although the trial judge denied a motion to remove juror number 973 for cause, defense counsel removed the juror with a peremptory strike.

Juror number 075, who did not respond to the *Ridley* question during voir dire, later informed the jury during its deliberations that her son had been convicted of a crime. After being informed of this fact by a jury note, the trial judge conducted an additional voir dire of juror number 075, during which the juror advised that she had misunderstood the *Ridley* question to include only criminal convictions more than ten years old. After the second voir dire of juror 075, defense counsel renewed his motion for a mistrial, which the trial judge denied.

## II

■ Appellant contends that his due process rights were violated when the trial judge refused to strike juror number 973 for cause. We disagree. The trial judge has broad discretion over whether to strike a juror for cause, *Rease v. United States*, 403 A.2d 322, 325 (D.C.1979); *Wilburn v. United States*, 340 A.2d 810, 812 (D.C. 1975), and the exercise of that discretion will not be reversed "unless the juror's partiality is manifest." *Wilburn, supra,* 340 A.2d at 812. In determining whether a juror can be impartial, the trial judge must consider all circumstances and not merely accept the juror's belief as controlling. *Id.* We find no basis on which to conclude that the juror's partiality was manifest.

■ Although the juror was a victim of armed robbery—the same crime of which appellant was charged—the event occurred over 15 years before appellant's trial, beyond the 10 year scope of the *Ridley* question. While the juror described the incident as "traumatizing," she was not physically injured and was never subsequently involved in testifying against, or identifying, her attacker. Moreover, the juror described herself as an "analytical person"

---

**1.** Appellant was acquitted of one count of perjury, D.C.Code § 22–2512.

**2.** *United States v. Ridley,* 134 U.S.App.D.C. 79, 412 F.2d 1126 (1969).

who could "deal with facts." [3] The trial judge had the opportunity to evaluate the juror's demeanor, and his conclusion that she could be impartial was not unwarranted. *See State v. Singletary*, 80 N.J. 55, 63, 402 A.2d 203, 207 (1979) (in armed robbery trial, no abuse of discretion in not excusing juror who had been victimized during armed robbery seventeen days before being called to jury duty, although recent involvement in similar crime will often require recusal), *rev'g* 156 N.J.Super. 303, 383 A.2d 1151 (App.Div.1978); *Thomas v. State*, 50 Md.App. 286, 295–96, 437 A.2d 678, 684 (1982) (in felony murder and armed robbery trial, any error in not excusing two potential jurors who had been victims of armed robbery was harmless since defendant only used 15 of 20 peremptory challenges); *Guardino v. State*, 50 Md.App. 695, 696, 440 A.2d 1101, 1103 (1982) (in trial for rape, robbery and battery, no abuse of discretion in not excusing potential juror who had been victim of recent burglary or juror whose spouse had twice been victim of purse snatching, since as to latter juror, defense had available peremptorily challenges when juror accepted); *Commonwealth v. Westerfer*, 308 Pa.Super. 474, 454 A.2d 633 (1982) (in burglary, theft and conspiracy trial, no abuse of discretion in not excusing potential juror who had previously been victim of burglary since defense used only 15 of its 20 peremptory challenges).

### III

Appellant also contends that his due process rights were violated when the trial judge denied his motion for a mistrial after learning that juror number 075 had not responded to the *Ridley* question despite the fact that her son had been convicted of a crime within the past ten years.

■ Where a claim of juror partiality is made, "the remedy ... is a hearing in which the defendant has the opportunity to prove actual bias," *Shannon & Luchs Management Co. Inc. v. Roberts*, 447 A.2d 37, 41 (D.C.1982) (quoting *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)); *accord*, *Artisst v. United States*, 554 A.2d 327, 331 (D.C.1989), and the trial judge has some discretion where a juror's nondisclosure of information during voir dire "is innocent or inadvertent, ... in deciding whether to order a new trial." [4] *Shannon & Luchs Management Co. Inc. v. Roberts, supra*, 447 A.2d at 43 (citation and internal quotes omitted). In *Shannon & Luchs* the court held that there was no abuse of discretion in not ordering a new trial even though the juror's inadvertent nondisclosure might have caused the defendant to use his third peremptory challenge. *Id.* at 44. The court noted that the trial judge had considered both the juror's reasons for failing to disclose the information and the "materiality of the undisclosed information," and would not have dismissed the juror for cause, and that the defendant had not used his third peremptory challenge in connection with another juror under similar circumstances. *Id.* at 43–44. In that case, the court stated that in determining the materiality of undisclosed information:

> the trial court must determine (1) whether it would have excused the juror out of an abundance of caution had the information been revealed on voir dire, and (2) whether, in the court's opinion, this disclosure of the information would have resulted in a peremptory challenge to the juror.

*Id.* at 44.

In *Artisst*, the court held that the procedures adopted for post trial disclosures, as in *Shannon & Luchs*, would apply to dis-

---

**3.** Appellant argues that the juror could not have been "completely impartial" because, in response to defense counsel's questioning about whether her experience might "color" the way she would "see the case" against appellant, she said, "It's hard to call." However, the appropriate standard for review by this court is not whether the juror was "completely impartial," but rather whether the juror was manifestly

partial. *See, e.g., Allison v. United States*, 451 A.2d 877, 879 (D.C.1982); *Wilburn, supra*, 340 A.2d at 812.

**4.** Juror number 075 explained to the trial judge during the second voir dire that she misunderstood the *Ridley* question to be inquiring about convictions more than ten years old.

closure during trial of juror infirmity. *Artisst, supra,* 554 A.2d at 331.[5] Thus, it was "appropriate to reopen voir dire to determine whether any of the jurors was actually biased, and upon a showing of such bias, to unseat the prejudiced juror in favor of an alternate." *Id.*

■ During consideration of the defense motion for a mistrial, the trial judge asked defense counsel whether he "believed a mistrial would be warranted under the law" if the trial judge concluded that the juror simply misunderstood the *Ridley* question during voir dire and that the defense would have exercised a peremptory challenge if the information withheld by the juror had been disclosed. Defense counsel answered this question affirmatively, and expressed his view that the issue did not turn solely on "whether the juror was deliberately being misleading or not." The trial judge responded by saying, "Well, ... I think you're wrong," and denied the motion for a mistrial. This colloquy between the judge and defense counsel followed defense counsel's explanation to the judge of why the defense would have struck the juror.[6]

In *Shannon & Luchs Management Co. Inc. v. Roberts, supra,* 447 A.2d at 45, the court made clear that the issue of materiality turns not only on whether the trial judge would have excused the juror but on whether the defense might have exercised a peremptory challenge to the juror. Although the trial judge in the instant case did not make an express finding that defense counsel would have used a peremptory challenge to strike the juror, it is implicit in his question to defense counsel. The question followed defense counsel's persuasive statement of why he would have struck the juror. Likewise, the judge's finding that the juror's failure to respond was based on a misunderstanding of the *Ridley* question is also implicit in his question to defense counsel. Thus, the only question is whether the judge abused his discretion in denying a mistrial.

The government maintains, and we agree, that the circumstances involving the juror's son did not demonstrate actual bias or that the juror would properly have been struck for cause.[7] Her responses show, as the government maintains, that "she appeared willing and able to decide the case

---

5. The possible deprivation of the exercise of a peremptory challenge does not mandate reversal because the relevant issue is whether the juror was actually biased against the defendant. *Shannon & Luchs Management Co. Inc. v. Roberts, supra,* 447 A.2d at 43, 45; *see McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (for new trial, must demonstrate juror failed to answer honestly on voir dire and that correct response would have provided basis for challenge for cause).

6. At trial defense counsel indicated to the judge that jurors who had displayed similar characteristics to juror 075 had been peremptorily challenged by the defense during voir dire. Specifically, defense counsel pointed out that he had struck jurors whose family members had been charged with crimes and that he "presumptively did not want ... jurors on [his] cases who have been government witnesses, especially when they have been government witnesses in a charge that is at issue." He expressed particular concern about the juror who testified for the government against her son on an armed robbery charge. Counsel reminded the judge that the defense had used all of its peremptory challenges and would have used one here, pointing out that, according to his notes, nine or ten of

the jurors had no contacts with the criminal justice system.

7. Appellant's reliance on *Jackson v. United States,* 129 U.S.App.D.C. 392, 395 F.2d 615 (1968), is to no avail. In *Jackson,* the court relied on *United States ex rel. De Vita v. McCorkle,* 248 F.2d 1 (3rd Cir.), *cert. denied,* 355 U.S. 873, 78 S.Ct. 121, 2 L.Ed.2d 77 (1957) (setting aside robbery conviction where juror had been previous robbery victim), and *Durham v. State,* 182 Tenn. 577, 188 S.W.2d 555 (1945) (juror in rape case previously a prosecution witness in assault with intent to rape case). *Jackson, supra* note 7, 129 U.S.App.D.C. at 394–95, 395 F.2d at 617–18. The court noted that it was "difficult to make a 'meaningful distinction" between the nondisclosure of past contacts with the criminal justice system by the juror personally and a juror's brother. *Id.* at 395, 395 F.2d at 618. But in *Jackson,* the juror had experienced the same bizarre experience that was the basis for the charge being tried. *Id.* So too in *Wilburn, supra,* 340 A.2d at 812–13, on which appellant relies, actual partiality was shown where the juror was a personal friend of a government witness' mother and had known the witness as a child and the trial judge expressed concern that the juror might rely on information obtained outside of the trial.

impartially on the basis of the facts presented, and ... nothing in her personal circumstance indicates actual partiality on her part sufficient to constitute a challenge for cause." Contrary to appellant's contention, there is no basis for finding a presumption of bias.[8] The juror stated that she thought she had been treated fairly by the prosecution and defense at her son's trial, and the relationship between the charges against appellant and the experiences of the juror's son were more attenuated than cases involving a juror's involvement in the same type of criminal situation as underlies the charges against appellant. *See* cases cited in Part II, *supra; cf. United States v. Jones,* 608 F.2d 1004, 1007 (4th Cir.1979) (juror or juror's relative being victim of crime unrelated to offense tried is "only minimally relevant to the question of the juror's impartiality"), *cert. denied,* 444 U.S. 1086, 100 S.Ct. 1046, 62 L.Ed.2d 773 (1980).

Accordingly, we affirm the judgment.

**8.** Appellant cites authorities for the proposition that there was a presumption of partiality requiring a new trial. He cites *Jackson, supra* note 7, 129 U.S.App.D.C. 392, 395 F.2d 615 (love triangle trial; juror involved in similar love triangle); *Wilburn, supra,* 340 A.2d 810 (juror knew key government witness in rape trial); *United States v. Eubanks,* 591 F.2d 513 (9th Cir.1979) (juror failed to reveal during voir dire that her two sons were in prison for armed robberies related to their drug habit); *United States ex rel. De Vita v. McCorkle, supra* note 7, 248 A.2d at 1 (in robbery prosecution, juror robbed in similar fashion several months earlier); *United States v. Perkins,* 748 F.2d 1519 (11th Cir.1984) (juror's knowledge of defendant and involvement in civil and criminal litigation); *United States v. Bynum,* 634 F.2d 768 (4th Cir.1980). However, as the government points out in its brief, this court expressly adopted *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (juror bias should not be presumed), in *Shannon & Luchs Management Co. Inc. v. Roberts, supra,* 447 A.2d at 41–43, and *Artisst, supra,* 554 A.2d at 330 & n. 3.